[Crim. No. 1462. In Bank.—January 6, 1909.]

## In Re GEORGE HOFFMAN, on Habeas Corpus.

MUNICIPAL ORDINANCE REGULATING SALE OF MILK—REQUIREMENTS OF SOLIDS—CONSTRUCTION TO AVOID UNCERTAINTY.—An ordinance regulating the sale of milk and prescribing that it shall contain "Total milk solids, 12.5 per centum by weight: Butter fat, 3.5 per centum by weight, and water, 87.5 per centum by weight," is not void on account of vagueness, uncertainty or contradiction. Properly construed, the ordinance requires that milk shall contain 12.5 per centum milk solids, of which at least 3.5 per centum shall be butter fat.

ID.—CONFLICTING ORDINANCE SUPERSEDED BY STATUTE.—A municipal ordinance regulating the sale of milk and providing a standard therefor, enacted under the authority of section 11 of article XI of the constitution, empowering a city to make and enforce within its limits "all such local, police, sanitary, and other regulations as are not in conflict with general laws," is superseded by a subsequent general statute of the state in conflict therewith.

ID.—MUNICIPALITY MAY IMPOSE ADDITIONAL REQUIREMENTS.—The mere fact that the state in the exercise of the police power has established certain regulations by statute, does not prohibit a municipality from exacting additional requirements. So long as there be no conflict between the two, and so long as the requirements of the municipal ordinance are not in themselves pernicious as being unreasonable or discriminatory, both will stand.

ID.—STATUTE REGULATING SALE OF MILK—ORDINANCE CONTAINING DIFFERENT REGULATIONS AND PENALTY.—A municipal ordinance requiring of milk vended a certain percentage of solids, not in itself unreasonable, but which is larger than the percentage of solids required by the act of 1907 (Stats. 1907, p. 265), is not in conflict with that act. Nor is it any objection to the validity of the ordinance that its regulatory provisions and the penalty for its violation differ from those of the state law.

ID.—REASONABLENESS OF ORDINANCE—NATURAL MILK BELOW REQUIREMENTS.—Such ordinance will not be held unreasonable merely because it establishes a standard for milk which is higher than that which may come in its natural state from cows of a certain breed.

ID.—ORDINANCE FOR IMMEDIATE PRESERVATION OF HEALTH.—DATE OF GOING INTO EFFECT—STATEMENT OF URGENCY NOT CONCLUSIVE.— Under a provision of a municipal charter which declares that no ordinance shall go into effect before thirty days from the time of its passage and approval by the mayor, "except an ordinance for the immediate preservation of the public peace, health or safety which contains a statement of its urgency and is passed by a two-thirds vote of the council," a statement in an ordinance regulating the sale of milk that "it is urgently required for the immediate preservation of the public peace, health and safety," is neither conclusive nor sufficient. Such a statement, however, would not nullify the ordinance, and it would become operative after thirty days from its passage.

ID.—REQUIREMENTS FOR MILK NOT NECESSARY TO IMMEDIATE PRESERVATION OF HEALTH.—It cannot be a matter for the immediate preservation of the public health, within the meaning of such charter provision, that milk vended should contain 3.5 per centum of milk fat instead of 3 per centum, and that the total amount of water shall be 84.5 instead of 85 per centum.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

R. A. Ling, Powers & Holland, and John J. Fleming, for Petitioner.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, and Guy Eddie, Deputy City Attorney, for Respondent.

HENSHAW, J.—*Habeas corpus.* The city of Los Angeles passed an ordinance, No. 13,171 (new series), regulating the sale of milk and cream. The ordinance contained many regulatory provisions making for hygienic conditions which are not necessary here to consider, for the petitioner was charged with and convicted of a violation of a single section of the ordinance. That section is number 9 and fixes the standard of milk sold in the city. It does this in the following language:—

"Section 9. The standard of milk . . . in and for the city of Los Angeles is hereby defined and prescribed as follows:
"For Milk:
"Total milk solids, 12.5 per centum by weight.
"Butter fat, 3.5 per centum by weight.
"Water, 87.5 per centum by weight."

Against the validity of this section petitioner advances several arguments.

1. He insists that the section is void because its provisions are vague, uncertain, and contradictory. In this his argument is that the required standard is 87.5 per centum water, 12.5 per centum milk solids, and 3.5 per centum butter fat, or a total of 103.5 per centum of ingredients, which, as is very justly argued, is a physical impossibility, since the component parts of a single article cannot constitute more than 100 per centum, else the whole would be greater than all its parts. The answer to this, however, obviously is that the ordinance means that of the 12.5 per centum milk solids, at least 3.5 per centum shall be butter fat. So read, the ordinance is not objectionable upon the ground urged.

2. Subsequent to the passage of this ordinance, the state in 1907 placed upon its statute books "An act to prohibit adulteration and deception in the sale of dairy products, defining adulteration in dairy products, and to provide for enforcing

its provisions." (Stats. 1907, p. 265.) This statute declared that it shall be unlawful for any person to produce, manufacture, or prepare for sale, or to sell or offer for sale, or have on hand for sale, any milk that is adulterated within the meaning of the act. As to what should constitute adulteration, the act provided (sec. 2) that milk should be deemed adulterated that did not conform with the following definition and standard: "Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more healthy cows . . . and contains not less than three per cent of milk fat, and not less than eight and five-tenths per cent of solids —not fat. . . ." The constitution (art. XI, sec. 11), empowers a city to make and enforce within its limits "all such local, police, sanitary, and other regulations as are not in conflict with general laws." It is insisted that the state, having thus provided a standard for pure milk, the attempt of the city ordinance to vary that standard creates a conflict in the law, with the necessary result that the ordinance must fall.

Undoubtedly if such a conflict exists, the ordinance must give way to the paramount law of the state. But does such a conflict exist? for, if it does not, then it is well settled that the mere fact that the state in the exercise of the police power has made certain regulations, does not prohibit a municipality from exacting additional requirements. So long as there be no conflict between the two, and so long as the requirements of the municipal by-law are not in themselves pernicious as being unreasonable or discriminatory, both will stand. (*Ex parte Hong Shen*, 98 Cal. 681, [33 Pac. 799]; *In re Murphy*, 128 Cal. 29, [60 Pac. 465]; *Bellingham* v. *Cissna*, 44 Wash. 397, [87 Pac. 481].) In the first case cited the principle is fully recognized and expounded, and assent is refused to the argument there advanced, that an ordinance is in conflict with the general laws when it makes another and different regulation for the sale of an article of commerce than that provided by the statute of the state. In the last case cited, the city of Bellingham had by ordinance declared it unlawful for an automobile to be driven on public streets at a greater rate of speed than six miles per hour. Subsequently the state passed an act prohibiting the driving of automobiles "within the thickly settled or business portion of any city at a greater speed than twelve miles an hour."

There, as here, the state law was passed subsequent to the enactment of the municipal ordinance. There, as here, a conflict between the terms was urged, but it was held, upon the soundest principles, that there was no conflict, and that it was competent for the authorities of Bellingham to prescribe a rate of speed less than that which the state law permitted. The correctness of the principle may not be doubted. If the state should pass a law declaring it unlawful to erect a chimney of a height exceeding one hundred and fifty feet, would any one seriously contend that a city of the state within the earthquake zone might not by ordinance, in the clear exercise of the police power, for the benefit of its citizens, still further restrict the height of chimneys? Such, in principle, is the present case. The legislature has in effect declared that it shall be unlawful to sell milk containing less than 11.5 per centum solids, 3 per centum of which solids shall be milk fat. An ordinance of a municipality requiring of the milk vended therein a larger percentage of solids, if not in its exactions unreasonable, does no violence to the law of the state. The state's declaration merely is that milk shall not be sold containing less than 11.5 per centum of solids, 3 per centum of which shall be milk fat. If the city of Los Angeles had provided that milk might be vended which contained less per centum of milk fats than that exacted by the state law, there would be presented a plain case of conflict. The municipality would be endeavoring to legalize that which the state had declared to be unlawful. But what the city has in fact done has been to impose not fewer but additional qualifications upon the milk which may be vended to its consumers. The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements. Such is the nature of the legislation here questioned.

3. Petitioner charges that this particular ordinance is unreasonable and in restraint of trade in exacting too high a

standard for the milk permitted to be sold. In his petition he avers "that milk may come direct and pure in its natural state from the cow, and especially from Holstein cows, and yet be below the standard fixed by the city ordinance, and, upon his best information and belief, the milk used in his restaurant, and upon which his conviction is based, could have been milk from Holstein cows." This averment stands unchallenged and is, therefore, to be taken as true. (*Ex parte Smith,* 143 Cal. 370, [77 Pac. 180].) It may be that a municipality may pass an ordinance imposing a standard for milk which would be unreasonable, oppressive, in restraint of trade, and therefore void. It may even be, for aught that this court can judicially know, that this ordinance is of that character. But the mere averment that milk below standard might come from one or another cow is not sufficient to tender an issue of this character. Nor is it any objection to the validity of the ordinance that its regulatory provisions and the penalty for its violation differ from those of the state law. If prosecution is had under the state law, a defendant is entitled to the protection which the state law affords him; if under the ordinance, then his rights and duties are governed by that enactment.

4. Section 198b of the charter of the city of Los Angeles declares that no ordinance passed by the council (. . . "except an ordinance for the immediate preservation of the public peace, health or safety which contains a statement of its urgency and is passed by a two-thirds vote of the council) shall go into effect before thirty days from the time of its final passage and its approval by the mayor. If during said thirty days a petition, signed by the electors of the city equal in number to at least seven per cent of the entire vote cast for all the candidates for mayor at the last preceding general election at which a mayor was elected, protesting against its passage be presented to the council, the same shall thereupon be suspended from going into operation," etc. This ordinance declared (section 18) that "it is urgently required for the immediate preservation of the public peace, health and safety." It is contended that the provision under consideration can by no possibility be one required for the immediate preservation of the public peace, health or safety; that the declaration of the council to that effect is of no binding force,

and that the ordinance therefore is a bold attempt to destroy the right to the referendum preserved to the people in section 198b, above quoted. We agree that it cannot be a matter for the immediate preservation of the public health that milk vended must contain 3.5 per centum of milk fat instead of 3 per centum, and that the total amount of water shall be 84.5 instead of 85 per centum. Furthermore, we agree that the mere declaration of the council in such a case that the ordinance is passed for the immediate preservation of the public health is neither conclusive nor yet sufficient. The nature of the ordinance itself will, in most instances, be determinative, and where a sudden emergency has arisen, a statement of the nature of the urgency finds proper place to support the declaration. So says the supreme court in *Wheeler* v. *Chubbuck*, 16 Ill. 364, in discussing the effect of the emergency clause necessary to put a law into immediate force: "But such direction must be made in a clear, distinct, and unequivocal provision and cannot be helped out by any sort of intendment or implication." But, conceding this, the effect of the concession is not to destroy the ordinance. By the very terms of the charter, if the ordinance be not one of emergency, the date of its operation is postponed for thirty days. So here, the utmost for which petitioner could contend was that the date when section 8 went into operation was thirty days from its passage. But as more than thirty days had elapsed before his arrest for a violation of its provisions, he is entitled to no relief.

For the foregoing reasons the writ is discharged and the prisoner remanded.

Lorigan, J., Shaw, J., Melvin, J., Angellotti, J., Sloss, J., and Beatty, C. J., concurred.