## REGULATIONS AS TO WHAT SHALL CONSTITUTE A DAY'S LABOR ON PUBLIC WORKS.

Court of Appeals for Cuyahoga County.

OTTO STANGE v. CITY OF CLEVELAND.

Decided, November 15, 1915.

*Municipal Corporations—Validity of an Ordinance by a Charter City— Limiting a Day's Labor on Public Work—Does Not Impair Contracts, or Conflict with the State Statute on the Same Subject.*

A contract entered into by the charter city of Cleveland is subject to the provisions of an ordinance, subsequently adopted, limiting a day's labor on all public work to eight hours; and neither the defense of impairment of the obligation of contracts, or that the ordinance is in conflict with the state statute on the same subject, is available to a contractor prosecuted for violation of said ordinance.

*Squire, Sanders & Dempsey,* for plaintiff in error.

*John N. Stockwell,* City Solicitor, and *Arthur F. Young,* Assistant City Solicitor, contra.

MEALS, J.

The plaintiff in error was convicted in the municipal court of violating an ordinance of the city of Cleveland providing for an eight hour day on public work. The judgment of the municipal court was affirmed by the court of common pleas. Error is prosecuted to the latter judgment.

The affidavit filed in the municipal court against the plaintiff in error charges the latter as follows: That on December 1, 1914, Otto Stange then and there being the superintendent and person in charge and control of a certain plant known and designated as "Casey & Company," at which said plant work of a public nature was then being conducted, to-wit, work on the installation of a water filtration plant for the city of Cleveland, a municipal corporation, unlawfully did then and there permit the workmen in his employ and under his control at said place as aforesaid to labor more than eight hours per day; that said labor so per-

formed as aforesaid not being then necessary as an extraordinary emergency and said laborers so mentioned as aforesaid not then and there being policemen or firemen.

To this affidavit a demurrer was interposed on the ground that it did not state facts sufficient to constitute an offense against the laws of the state of Ohio, which demurrer was overruled.

The principal question presented to us relates to the action of the court in overruling the defendant's demurrer. Other questions are made by the record, but they are of secondary importance.

It is contended by the plaintiff in error that the ordinance for the violation of which he was convicted, is void.

Section 37, Article II of the Constitution of Ohio, as amended in 1912, provides:

"Except in cases of extraordinary emergencies, not to exceed eight hours shall constitute a day's work, and not to exceed forty-eight hours a week's work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract, or otherwise."

It will be observed that no penalty is provided for the violation of this section. Therefore, to enforce its mandate, an act was passed by the General Assembly on April 13, 1913, entitled, "An act to provide for an eight-hour day on public work in the state, or any political subdivision thereof, or by contractors or subcontractors on behalf of the state or any political subdivision thereof, and penalties for violation of same." This act provides as follows:

"Section 1. Except in cases of extraordinary emergency, not to exceed eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work, for workmen engaged on any public work carried on or aided by the state, or any political subdivision thereof, whether done by contract or otherwise; and it shall be unlawful for any person, corporation or association, whose duty it shall be to employ or to direct and control the services of such workmen to require or permit any of them to labor more than eight hours in any calendar day or more than forty-eight hours in any week, except in cases of extraordinary emergency. This section shall not be construed to include policemen or firemen.

''Section 2. Any person who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction be fined not to exceed five hundred dollars or be imprisoned not more than six months or both:

''Section 3. This act shall be in force and applicable to all contracts let on and after July 1, 1915.''

Section 3, Article XVIII of the Constitution, as amended in 1912, provides:

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws.''

Section 7, Article XVIII of the Constitution reads as follows:

''Any municipality may frame, adopt or amend a charter for its government, and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government.''

The court will take judicial notice that on July 1, 1913, in pursuance of the authority given by the latter section, the city of Cleveland, by a vote of its people, adopted a charter for its government. Section 196 of this charter provides as follows:

''Hours of Labor. Except in case of extraordinary emergency, not to exceed eight hours shall constitute a day's work, and not to exceed forty-eight hours a week's work for workmen engaged in any public work carried on or aided by the municipality, whether done by contract or otherwise. The council shall by ordinance provide for enforcement of the provisions of this section.''

As in the case of the constitutional provision on the same subject, no penalty is provided in the charter for the violation of this section. Therefore, to enforce compliance with Section 196 of the charter, the city of Cleveland, on October 13, 1914, passed the following ordinance:

''Section 1. Be it ordained by the council of the city of Cleveland, state of Ohio: That except in cases of extraordinary emergency not to exceed eight hours shall constitute a day's work and not to exceed forty-eight hours a week's work,

for workmen engaged on any public work carried on or aided by the city of Cleveland, whether done by contract or otherwise, and it shall be unlawful for any person, corporation, or association who shall employ or direct and control the services of such workmen to require or permit any of them to labor more than eight hours in any calendar day or more than forty-eight hours in any week except in cases of extraordinary emergency.

"Section 2. Any person who shall violate any of the provisions of this ordinance shall be guilty of a misdemeanor, and upon conviction, be fined in any sum not to exceed $500, or be imprisoned not more than six months, or both.

"Section 3. This ordinance shall take effect and be in force from and after the earliest period allowed by law."

The plaintiff in error was convicted of violating this ordinance.

Counsel for the plaintiff in error contend that the ordinance is in conflict with the general law and therefore void.

Section 3, Article XVIII of the Constitution, as amended in 1912, is a grant of powers from the people of the state to the municipalities of the state. *Fitzgerald* v. *Cleveland*, 88 Ohio St., 338; *State* v. *Lynch*, 88 Ohio St., 71; *State* v. *Edwards*, 90 Ohio St., 305.

Until the adoption of this amendment the municipalities of the state, "in their public capacity, possessed such powers and such only as (were) expressly granted by statute and such as (were) implied as essential to carry into effect those which (were) expressly granted." *Ravenna* v. *Pennsylvania Co.*, 45 Ohio St., 118.

By the adoption of this amendment municipalities were empowered "to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws." That the ordinance under consideration is an exercise of local police power seems plain. Is it in conflict with the act of the General Assembly of April 28, 1913, entitled "An act to provide an eight-hour day on public work?" While the operation of this act was suspended until July 1, 1915, we shall assume for the purposes of this case that it embodied the law and the policy of the state on the subject to which it related from and after its passage.

By its terms the act of the General Assembly was applicable to contracts only which were "let on and after July 1, 1915."

The provisions of the ordinance of the city were substantially similar to those of the state enactment, except that they became applicable to "all workmen engaged on any public work" from and after November 22, 1914. Thus the state denounced and penalized the act of employing workmen on public work for a longer period than eight hours in any one day or forty-eight hours in any one week, after July 1, 1915, while the city provided a penalty for the commission of a similar act prior to July 1, 1915.

But it is claimed that inasmuch as the statute was in effect from and after April 28, 1913, and that the policy of the state was declared therein, the ordinance penalizing such act committed prior to July 1, 1915, was in conflict with the general law and void.

The fallacy of this argument seems apparent. The case is not similar, as argued by counsel, to one wherein the Congress of the United States, in the exercise of its exclusive power to legislate upon a subject, "manifests its purpose to call that power into effect and at once remove that subject from the sphere of state action." Here the power of the state is not exclusive. It is concurrent; the municipality being granted like power by the Constitution "to adopt and enforce within its limits local police, sanitary and other similar regulations," subject only to the limitation that such regulations shall not be in conflict with state law.

Municipal police regulations, therefore, are valid unless inconsistent with state law; for it is only when they come in conflict with each other that the ordinance must yield to the paramount law. "Indeed," said Judge Cooley in his work on Constitutional Limitations, page 279, "an act may be a penal offense under the laws of the state and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of one would not preclude the enforcement of the other."

An ordinance or municipal by-law and a state law are not necessarily in conflict merely because they relate to the same

subject. If they are consistent both may stand and the penalties imposed by both may be enforced. This seems to be the uniform holding.

In *Rogers* v. *Jones,* 1 Wend. (N. Y.), 237, 261, the court said:

"But it is said that the by-law of a town or corporation is void if the Legislature has regulated the subject by law. If the Legislature has passed a law regulating as to certain things in a city, I apprehend the corporation is not thereby restricted from making further regulations."

Perhaps it is not necessary to multiply cases on this subject, but a reference to two or three will probably not be amiss.

In the case of *Hong Shen, Ex parte,* 98 Cal., 681, the statute of the state of California provided that no opium should be sold until the seller had labelled the opium "poison" and had ascertained that the person purchasing knew its poisonous character and that it was to be used for a legitimate purpose. The city ordinance absolutely prohibited the sale except upon the prescription of a physician, yet the court held there was no conflict in the two regulations. In the opinion in the case the court said:

"While the regulation is different from that of the state there is no conflict, and therefore it is not in violation of the constitutional provision quoted above. There are the very best of reasons why cities should be authorized to impose penalties in addition to those inflicted by the laws of the state. Particular acts may be far more injurious, while the temptation to commit them may be much greater in a crowded city than in the state generally. They consequently require more severe measures for prevention. State laws are, of course, for the general good and can not always answer the peculiar wants of particular localities."

In *Re Hoffman,* 155 Cal., 114, the statute of the state provided a certain penalty for the adulteration of milk, and that all milk which did not conform to a certain standard should be deemed adulterated. The city of Los Angeles passed an ordinance fixing the standard much higher than that fixed by statute. The statute fixed the standard at 3 per cent. of butter fat, while the ordinance fixed it at three and five-tenths per cent. It was

insisted that the state having thus provided a standard for pure milk, the attempt of the city ordinance to vary this standard created a conflict in the law, with the necessary result that the ordinance must fall. In that case the court held in the syllabus that:

"The mere fact that the state, in the exercise of the police power, has established certain regulations by statute, does not prohibit a municipality from exacting additional requirements so long as there be no conflict between the two, and so long as the requirements of the municipal ordinances are not in themselves pernicious as being unreasonable and discriminatory both will stand, nor is it any objection to the validity of the ordinance than its regulatory provisions and the penalty for its violation differ from those of the state law."

In the course of the opinion the court say:

"If the state should pass a law declaring it unlawful to erect a chimney of a height exceeding 150 feet, would any one seriously contend that a city of the state within the earthquake zone might not, by ordinance, in the clear exercise of the police power, for the benefit of its citizens still further restrict the height of chimneys? Such, in principle, is the present case. The Legislature has in effect declared that it shall be unlawful to sell milk containing less than eleven and five-tenths per cent. solids, three per cent. of which solids shall be milk fat. An ordinance of a municipality requiring of the milk vended therein a larger percentage of solids, if not in its exactions unreasonable, does no violence to the law of the state. The state declaration merely is that milk shall not be sold containing less than eleven and five-tenths per cent. of solids, three per cent. of which shall be milk fat. If the city of Los Angeles had provided that milk might be vended which contained less per cent. of milk fat than that exacted by the state law, there would be a plain case of conflict. The municipality would be endeavoring to legalize that which the state had declared to be unlawful, but what the city has in fact done has been to impose not fewer, but additional qualifications upon the milk which may be vended to its consumers. The state, in its law, deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of

densely populated municipalities so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements. Such is the nature of the regulation here questioned."

A similar question arose in *Bellingham* v. *Cissna,* 44 Wash., 397. There the charter of the city granted to the city of Bellingham full power to regulate and control the use of its streets. A state law was passed making it a misdemeanor to drive an automobile in the streets of any city faster than twelve miles an hour. Later the city of Bellingham passed an ordinance fixing the maximum speed at which a machine could be driven, in the same parts of the city, at six miles per hour. It was insisted that the ordinance must fall because in conflict with the state law, but the court decided upon the soundest principles that there was no conflict and that it was competent for the authorities of Bellingham to prescribe a rate of speed less than that which the state law permitted.

The plaintiff in error was a member of the firm of Casey & Company, a partnership, which entered into a contract with the city on April 30, 1914, for the construction of a part of the filtration plant at the Division Street Pumping Station. This was prior to the adoption of the ordinance but subsequent to the adoption of the city charter. It is claimed that the passage of the ordinance impaired the obligation of his contract and that it is inapplicable thereto.

Without regard to the provision of the contract "that the contractor agrees that he will comply with the provisions of the labor laws of the city of Cleveland and the state of Ohio, particularly as outlined in Section 196 of the city charter," we think it is a sufficient answer to this claim to state that the police power granted by the Constitution to the municipalities of the state is a power which may not be alienated or surrendered by contract or otherwise. *Butcher's Union Slaughter House Co.* v. *Live-stock Landing Co.,* 111 U. S., 746.

After a careful review of the record we find no error therein, and the judgment is affirmed.

GRANT, J., and CARPENTER, J., concur.