[Civ. No. 44984. Second Dist., Div. Three. Sept. 30, 1975.]

J. A. ECKL et al., Plaintiffs and Appellants, v.
EDWARD M. DAVIS, as Chief of Police, etc.,
Defendant and Respondent.

832

**COUNSEL**

Fleishman, McDaniel, Brown & Weston, Stanley Fleishman and Barry A. Fisher for Plaintiffs and Appellants.

Burt Pines, City Attorney, and Ward G. McConnell, Chief Deputy City Attorney, for Defendant and Respondent.

---

OPINION

FORD, P. J.—The plaintiffs have appealed from an order denying a preliminary injunction in an action brought to obtain a declaratory judgment that ordinance No. 146,360 of the City of Los Angeles, relating to nudity on public beaches and in other public areas, is unconstitutional and to enjoin the chief of police and other persons from enforcing or attempting to enforce the ordinance. In the complaint it is alleged that the individual plaintiffs are residents and taxpayers of the city and that they "desire to use the public beaches within the jurisdiction of the City of Los Angeles for sunbathing and swimming in the nude." It is further alleged that they "bring this action on their own behalf and on behalf of all other persons similarly situated."

The parties have not undertaken to discuss specifically the question of whether the trial court abused its discretion in denying a preliminary injunction (see *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 527-528 [67 Cal.Rptr. 761, 439 P.2d 889]; *City of Santa Monica* v. *Superior Court,* 231 Cal.App.2d 223, 226 [41 Cal.Rptr. 824]), but they have discussed in plenary manner the constitutionality of the challenged ordinance. Accordingly, we consider the substantive question of whether the ordinance is constitutional on its face. (Cf. *Crownover* v. *Musick,* 9 Cal.3d 405, 412-413 [107 Cal.Rptr. 681, 509 P.2d 497]; *7978 Corporation* v. *Pitchess,* 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746].)

The ordinance adds subdivision (x) to section 63.51 of the Los Angeles Municipal Code. The conduct thereby proscribed is that no person shall: "Appear, bathe, sunbathe, walk or be in any public park, playground, beach or the waters adjacent thereto, or any place under the jurisdiction of the Board of Recreation and Parks Commissioners, in such a manner that the genitals, vulva, pubis, pubic symphysis, pubic hair, buttocks, natal cleft, perineum, anus, anal region, or pubic hair region of any person, or any portion of the breast at or below the upper edge of the areola thereof of any female person, is exposed to public view or is not covered by an opaque covering." Subdivision (x) further provides: "This subdivision shall not apply to children under the age of 10 years. 2. This subdivision shall not apply to live theatrical performances performed in

a theater, concert hall, or other similar establishment located on public land."[1]

We turn first to the contention that the ordinance is invalid because it attempts to regulate an area which has been preempted by state legislation.[2] Article XI, section 7, of the California Constitution contains the provision here pertinent: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*."[3] (Italics added.)

Guidance in the application of the doctrine of preemption is found in Chief Justice Gibson's concurring opinion, in which Justice Traynor and Justice Peters joined, in *In re Lane*, 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]. It is there stated (p. 110): "Whether a particular statute or group of statutes is sufficiently comprehensive to show an intent to occupy the entire field is a matter which cannot properly be decided upon the basis of any single, precise test. Rather, the courts must rely

[1]The legislative purpose is shown in section 2 of the ordinance. That section is as follows: "Sec. 2. The People of the City of Los Angeles find and declare that the parks, playgrounds and beaches owned by the City of Los Angeles are operated and maintained for the use, benefit, recreation and enjoyment of all citizens and residents of this City; it is in the public interest, and necessary to the public health, safety and welfare that said parks and beaches be utilized and enjoyed by as many persons as possible; the maximum utilization and enjoyment of said and beaches [*sic*] can only be obtained through the imposition of regulations regarding activities thereon; the appearance of some persons utilizing said parks and beaches by appearing thereon without clothing and with the private parts of their bodies exposed, unreasonably interferes with the right of all persons to use and enjoy said parks and beaches by causing many persons to leave, and others not to come to said parks and beaches; such conduct and behavior imposes an extraordinary and unusual burden on City employees charged with the maintenance of said parks and beaches and the preservation of the safety and well-being thereof."

[2]Plaintiffs state: "The ordinance at issue in this case is preempted on two bases: First, because it directly conflicts with § 314 of the Penal Code; and second, because it attempts to regulate the area of sexual activity, an area which is unquestionably the exclusive domain of the State."

Penal Code section 314 is as follows: "Every person who willfully and lewdly, either [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or, [¶] 2. Procures, counsels, or assists any person so to expose himself or take part in any model artist exhibition, or to make any other exhibition of himself to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts, is guilty of a misdemeanor. [¶] Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288 of this code, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison for not less than one year."

[3]The present section 7 was added June 2, 1970. Prior to that time the pertinent provision was set forth in article XI, section 11, as follows: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

upon broad general principles which are flexible enough to embrace our varied and rapidly expanding body of legislation. Determination of the question depends primarily upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate, and the intent of the Legislature is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. [Citation.] In order to hold that the field has been occupied, it is not necessary that the Legislature has specifically declared the scheme or policy in so many words, and the general intent may be found in a multiplicity of statutes taken togehter. [Citation.] One of the factors stressed in the decisions is whether or not the subject calls for uniform treatment throughout the state. [Citations.] [¶] What has been said above makes it clear that whether the state has fully occupied the field with respect to any given subject depends upon considerations which will necessarily vary and must therefore be determined in every case without prejudging the result as to subjects not before the court. [Fn. omitted.]"[4]

In *Galvan* v. *Superior Court,* 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930], petitioner Galvan, a resident taxpayer and firearms owner in San Francisco, challenged the constitutionality of an ordinance which provided for the registration of all firearms within San Francisco, with certain exceptions. He contended that the ordinance was void because it conflicted directly with state laws regulating firearms and that, even if the ordinance be so construed as to avoid a direct conflict, it invaded the field of weapons control which, he asserted, had been preempted by the state.

In the course of holding in *Galvan* that the ordinance constituted a valid exercise of the police power, the Supreme Court noted the distinction between licensing and registration. With respect to the doctrine of preemption the court stated (70 Cal.2d at pp. 859-860): "A local ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. [Citations.] Whenever the Legislature has adopted a general scheme for the regulation of a particular subject, no local legislation on that subject is permissible. [Citations.] [¶] To determine whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the ' "whole purpose and scope of the legislative scheme." ' '

---

[4]In the case of *In re Farrant*, 181 Cal.App.2d 231, the court stated at page 234 [5 Cal.Rptr. 171]: "The very nature of the test discloses that its application must be *sui generis* to the particular field involved."

(*In re Lane, supra,* 58 Cal.2d at pp. 102-103.) [¶] *In re Hubbard, supra,* 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], established three tests to determine whether a subject has been preempted by the Legislature. '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' "

In *Galvan* the Supreme Court further stated (70 Cal.2d at pp. 862-864): "The task is, as shown in *Hubbard,* to determine whether the state has occupied a relevant field—an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject. . . . [¶] The issue of 'paramount state concern' also involves the question 'whether substantial, geographic, economic, ecological or other distinctions are persuasive of the need for local control, and whether local needs have been adequately recognized and comprehensively dealt with at the state level.' (*Robins* v. *County of Los Angeles,* 248 Cal.App. 2d 1, 9 [56 Cal.Rptr. 853].) [¶] That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority. Such differences were recognized in *People* v. *Jenkins, supra,* 207 Cal.App.2d Supp. 904, 907 [24 Cal.Rptr. 410], *People* v. *Commons, supra,* 64 Cal.App.2d Supp. 925, 932 [148 P.2d 724] . . . , and in *Gleason* v. *Municipal Court,* 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226]. . . . [¶] We are persuaded by language in *In re Hoffman,* 155 Cal. 114, 118 [99 P. 517, 132 Am.St.Rep. 75]: 'The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements.' "

With respect to the effect of the San Francisco firearms registration ordinance on transients, the Supreme Court stated in *Galvan* (70 Cal.2d

at p. 865): "The law, then, interferes less with transients than, for example, the Fresno ordinance prohibiting the consumption of alcoholic beverages on the street (*People* v. *Butler,* 252 Cal.App.2d Supp. 1053, 1057 [59 Cal.Rptr. 924]), the Los Angeles gambling ordinance (*People* v. *McGennis,* 244 Cal.App.2d 527, 533 [53 Cal.Rptr. 215]), or the Los Angeles loitering ordinance (*Gleason* v. *Municipal Court, supra,* 226 Cal.App.2d 584, 587)—all of which were found not preempted by state law, and all of which apply to *anyone* within the geographic confines of the city, and not merely to residents."

*People* v. *Butler,* 252 Cal.App.2d Supp. 1053 [59 Cal.Rptr. 924], to which reference is made in *Galvan,* involved an ordinance of the City of Fresno which was as follows: "No person shall drink any beer, wine, or other intoxicating beverage on any street, sidewalk, alley, highway, or playground. This section shall not be deemed to make punishable any act or acts which are prohibited by any law of the State of California." In holding that the ordinance was not invalid under the doctrine of preemption, the court stated (p. 1055): "No clairvoyance is required to visualize that the consumption of alcoholic beverages on public streets, etc., could well constitute a social evil and police problem, particularly when we consider such a public gathering place as a mall where large numbers of the people congregate into the evening. [¶] Unless action by the city is barred by the enactment of state laws exclusively preempting the field, most certainly a city would be empowered to control the actual and potential social hazard created by the consumption of alcohol on the streets, etc."

In *Butler* the court further stated (252 Cal.App.2d Supp. at p. 1056): "We do not believe that by the adoption of such selective laws, the Legislature intended to say that it had covered all those areas wherein the consumption of alcoholic beverages might create police problems. By prohibiting the consumption of liquor by minors on on-sale premises, was it intended to be implied that they could drink elsewhere? We have already seen that the basic constitutional provisions on the subject make no allusion whatsoever to the consumption of alcoholic beverages." The court further noted (p. 1058): "As to the third criterion [of *In re Hubbard,* 62 Cal.2d 119 (41 Cal.Rptr. 393, 396 P.2d 809)], there would appear to be nothing in a municipal ordinance regulating the consumption of alcoholic beverages on streets, malls, etc. which would have any appreciable impact on the transient citizen to the degree that it would outweigh the benefit to a municipality in the control of such drinking."

In another case cited by the Supreme Court in *Galvan, Gleason* v. *Municipal Court,* 226 Cal.App.2d 584 [38 Cal.Rptr. 226], petitioner Gleason, who had been arrested for loitering in a pedestrian tunnel, sought to restrain the municipal court from proceeding with the prosecution of him for violation of section 41.18(b) of the Los Angeles Municipal Code. That section was as follows: "No person shall loiter in any tunnel, pedestrian subway, or on any bridge overpass, or at or near the entrance thereto or exit therefrom, or at or near any abutment or retaining wall adjacent to such entrance or exit, or any retaining wall or abutment adjacent to any freeway, street or highway open and used for vehicular traffic, or adjacent to that portion thereof used for vehicular traffic, or any public property in the proximity of such bridge, overpass, or retaining wall or abutment." The contention made was that the state, by the provisions of Penal Code section 647, had preempted the field encompassing loitering offenses.

In rejecting the petitioner's contention the court stated in *Gleason* (226 Cal.App.2d at pp. 586-587): "It is evident that the Legislature did not intend to occupy the entire field of loitering and preclude local legislation thereon. There is no extended body of state legislation presented, and Penal Code section 647 is limited in its terms and applications. The only subdivisions of Penal Code section 647 dealing with loitering are (d) loitering about public toilets, (e) common vagrancy, and (g) loitering or prowling on private property at night. Subdivision (e) uses the terminology '. . . upon the streets or from place to place without apparent reason. . . .' Section 647a, subdivision (2), proscribes loitering about any school or public place where children normally congregate. These Penal Code sections make no mention of loitering in tunnels, pedestrian subways or bridge overpasses, unless we interpret the words 'from place to place' in subdivision (e) to be all-encompassing. Had this been the intent of the Legislature, it would have been unnecessary for it to enact subdivisions (d) and (g)."

In *Gleason* the court further stated (226 Cal.App.2d at p. 587): "The kind of problem intended to be confronted and remedied by section 41.18(b) of the Municipal Code is not common to the state generally but is more peculiar to centers of population where pedestrian tunnels and subways are provided for school children and others. In such places persons may lurk to annoy or molest women and children and solicit or rob pedestrians, or degenerates may indulge in exhibitionism or other lewd conduct, or others may seek to use such facilities as toilets or for shelter. The mere 'loitering' in such a place carries with it an inference

that the 'loiterer' is there for no good. It is common knowledge that these are places which are either partially or wholly obscured from public view, except as to those normally using such facilities. Thus, users are exposed to being trapped therein with the likelihood that shouts or cries for help would be drowned by the din of the nearby flow of vehicular traffic. Loitering in such places can have a sinister connotation implying evil purposes."

In the case presently before this court, as has been noted (fn. 2, *supra*), the state legislation upon which plaintiffs base their claim of preemption is embodied in Penal Code section 314. The nature of the conduct thereby proscribed was considered by our Supreme Court in *In re Smith*, 7 Cal.3d 362 [102 Cal.Rptr. 335, 497 P.2d 807]. Smith was convicted of indecent exposure (Pen. Code, § 314, subd. 1) and sought a writ of habeas corpus. The nature of his conduct is shown in the following portion of the opinion (pp. 363-364): "The issue is whether the act of sunbathing in the nude on an isolated beach, without intent to engage in sexual activity, is punishable under a statute which makes it a crime to 'willfully and lewdly' expose the private parts of the body. We conclude that the conduct in question is not prohibited by this statute, and hence that the writ should issue. [¶] The facts are undisputed. On the morning of August 7, 1970, petitioner and a male friend went to a beach for the purpose of sunbathing. Although the beach was open to the public, it was not in a residential area and was apparently used by relatively few people. Petitioner removed all his clothes, lay down on his back on a towel, and fell asleep. [¶] Some hours later the police appeared on the scene and arrested petitioner on a charge of indecent exposure. By that time several other persons were present on the beach. It was stipulated, however, that petitioner at no time had an erection or engaged in any activity directing attention to his genitals."

Portions of our Supreme Court's reasoning in *Smith* in support of its determination that there had been no violation of Penal Code section 314 are as follows (7 Cal.3d at pp. 365-366): "The separate requirement that the intent of the actor be 'lewd' is an essential element of the offense declared by section 314. [Citations.] The relevant dictionary meaning of 'lewd' is 'sexually unchaste or licentious,' 'dissolute, lascivious,' 'suggestive of or tending to moral looseness,' 'inciting to sensual desire or imagination,' 'indecent, obscene, salicious.' (Webster's New Internat. Dict. (3d ed. 1961) p. 1301.) . . . [¶] We are referred to no case defining 'lewdly' as used in section 314; but in the reported decisions upholding convictions of that offense against a claim of insufficient evidence,

something more than mere nudity has usually been shown. . . . [¶] From the foregoing definitions and cases the rule clearly emerges that a person does not expose his private parts 'lewdly' within the meaning of section 314 unless his conduct is sexually motivated. Accordingly, a conviction of that offense requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront. [Fn. omitted.] [¶] The necessary proof of sexual motivation was not and could not have been made in the case at bar. It is settled that mere nudity does not constitute a form of sexual 'activity.' [Citations.] Absent additional conduct intentionally directing attention to his genitals for sexual purposes, a person, as here, who simply sunbathes in the nude on an isolated beach does not 'lewdly' expose his private parts within the meaning of section 314."

*Smith* is a determination that nudity, in and of itself, is not within the proscription of Penal Code section 314. However, the fact that the Legislature has undertaken to proscribe sexually motivated public nudity—conduct as to which stringent control by legislation is obviously necessary—does not mean that the Legislature has thereby impliedly determined that public nudity not so motivated, including sunbathing in the nude on public beaches, is lawful and, therefore, not subject to local regulation. (See *In re Hubbard,* 62 Cal.2d 119, 126-127 [41 Cal.Rptr. 393, 396 P.2d 809].)[5] Rather, the reasonable conclusion is that the Legislature intended to reach the serious problem of sexually motivated public nudity and to leave the matter of the control of public nudity not so motivated to the commonly accepted concept of social propriety and to local legislative bodies if particular circumstances call for appropriate action.[6]

[5]In *Bishop* v. *City of San Jose,* 1 Cal.3d 56, at page 63 [81 Cal.Rptr. 465, 460 P.2d 137], the Supreme Court stated: ". . . the Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.[6]" Footnote 6 is in part as follows: "Any statements to the contrary found in *In re Hubbard* (1964) 62 Cal.2d 119, 127-128 [41 Cal.Rptr. 393, 396 P.2d 809], were not only unnecessary to the decision there, but are overruled if they be deemed authoritative." However, we do not understand that statement to detract from the value of *In re Hubbard* as support for the reasoning for which we cite it.

[6]Some indication of the existence of a commonly accepted concept of propriety with respect to the conduct of appearing publicly in the nude is found in judicial statements made in various contexts. Thus, the dissenting opinion of Justice Douglas in *Roth* v. *United States,* 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], contains the following statement (pp. 512-513 [1 L.Ed.2d p. 1522]): "No one would suggest that the First Amendment permits nudity in public places, adultery, and other phases of sexual misconduct. . . . Government should be concerned with antisocial conduct, not with utterances." In his dissenting opinion in the recent case of *Erznoznik* v. *City of Jacksonville,* 422 U.S. 205 [45 L.Ed.2d 125, 95 S.Ct. 2268], Chief Justice Burger stated (422 U.S.

In section 2 of the challenged ordinance it is noted that the city's parks, playgrounds and beaches are maintained for the "use, benefit, recreation and enjoyment of all citizens and residents of this City; that it is in the public interest, and necessary to the public health, safety and welfare that said parks and beaches be utilized and enjoyed by as many persons as possible"; and that "the appearance of some persons utilizing said parks and beaches by appearing thereon without clothing and with the private parts of their bodies exposed, unreasonably interferes with the right of all persons to use and enjoy said parks and beaches by causing many persons to leave, and others not to come to said parks and beaches."

It thus appears that the purpose of the ordinance is not to regulate sexually motivated conduct but, rather, to insure the peaceful and undistracted enjoyment of the parks and public beaches of the city by all persons who choose to come there.

In summary, Penal Code section 314 does not proscribe conduct other than that which is sexually motivated, the absence of statutory provisions governing public nudity not so motivated does not reflect a legislative intent to prohibit local legislation with respect thereto when otherwise appropriate, the ordinance of the city constitutes a reasonable regulation for the general welfare, and it imposes no undue burden on transients. The ordinance is not invalid on the ground of state preemption.

The determination just stated is not undermined by the reasoning of our Supreme Court in *Parr v. Municipal Court*, 3 Cal.3d 861 [92 Cal.Rptr. 153, 479 P.2d 353]. The ordinance there involved was not invalidated on the ground of preemption but, rather, on the ground that it was void on its face because it was unconstitutional class legislation

at p. 223 [45 L.Ed.2d at p. 139]): "On the other hand, assuming arguendo that there could be a play performed in a theater by nude actors involving genuine communication of ideas, the same conduct in a public park or street could be prosecuted under an ordinance prohibiting indecent exposure. This is so because the police power has long been interpreted to authorize the regulation of nudity in areas to which all members of the public have access, regardless of any incidental effect upon communication. A nudist colony, for example, cannot lawfully set up shop in Central Park or Lafayette Park, places established for the public generally. [Citations.] Whether such regulation is justified as necessary to protect public mores or simply to insure the undistracted enjoyment of open areas by the greatest number of people—or for traffic safety—its rationale applies a fortiori to giant displays which through technology are capable of revealing and emphasizing the most intimate details of human anatomy." And in the dissenting opinion in *Crownover v. Musick*, 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497], Justice Tobriner stated (p. 441): "I have no doubt that it [the government] may regulate nudity on public streets, where such behavior may offend bystanders; . . ."

which violated the equal protection clause of the Fourteenth Amendment. The court stated (p. 868): "We conclude that the discriminatory purpose underlying ordinance 697.02 invalidates the measure. That would be so even if the section did not have a predictable discriminatory impact. By using official Municipal Code language to single out a social group ["hippies"] and stigmatize its members as 'undesirable' and 'unsanitary,' the city council violated the constitutional guaranty of the equal protection of the laws." Unlike the situation in *Parr,* in the case presently before this court the plaintiffs are free to make full use of the public beach, just as all members of the public may do, but they seek to do so without the reasonable minimum amount of clothing which the ordinance requires of all persons over the age of 10 years.

■    Plaintiffs further contend that the ordinance violates the free speech and religious liberty provisions of the First and Fourteenth Amendments of the United States Constitution and related provisions of the California Constitution. It is stated: "It is well settled that one's personal appearance constitutes a protectable form of expression ranking high on the spectrum of our social values. [Citations.] As set out above, BEACHFRONT U.S.A. and its members' abbreviated beach dress and nudity are serious expressions of spiritual and cultural belief."

Reliance is placed on *United States* v. *O'Brien,* 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673]. It is argued: ". . . there can be little question but that it is impossible to separate the regulated conduct from conduct's expressive content. What is regulated here is public nudity. But it is precisely the public aspect of the nudity which constitutes the expressive nature of the conduct. The very essence of the expression involved here is the removal of clothing in public. Thus far from being unrelated to the suppression of free expression, the governmental regulation in this case is exactly co-extensive with it. [¶] As to the fourth prong of the O'Brien test, it can hardly be argued that an arbitrary prohibition of all beach nudity, irrespective of where and how it takes place, is absolutely necessary to achieve the governmental interest that may be involved here. If this ordinance can somehow be justified on the basis that nudity offends some people, then the answer is in zoning off specific, semi-isolated areas in posting appropriate warning signs, not the total indiscriminate prohibitions provided for."

The religious aspect is stated to consist of the city's "attempt to prohibit 'sin' by the use of its criminal laws." It is asserted: "Thus approached, the ordinance breaches the wall separating church and state

in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, § 4 of the California Constitution."

Guidance in the resolution of the issues thus presented is found in the reasoning of *Crownover* v. *Musick, supra,* 9 Cal.3d 405.[7] As was true with respect to the ordinances before the court in *Crownover,* the challenged ordinance in the case presently before this court is directed at conduct, not words or speech.

With respect to the rights of freedom of speech and expression guaranteed by the First and Fourteenth Amendments to the United States Constitution and by article I, section 9, of the California Constitution,[8] the court stated in *Crownover* (9 Cal.3d at p. 419): "Although it has been said that there is no constitutional distinction between speech and conduct [fn. omitted] the high court has refused to accept the view that all conduct is to be deemed speech merely because it was intended to be communicative in some way. (See *United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673].) As will appear the court has separately conceptualized 'speech' and conduct and in a variety of contexts has made an accomodation between them."

After extensive discussion of pertinent decisions of the United States Supreme Court, the court in *Crownover* stated (9 Cal.3d at pp. 425-426): "It is clear that these provisions of the ordinances are directed at conduct—topless and bottomless exposure—and not at speech or at conduct which is 'in essence' speech or 'closely akin to speech.' A common sense construction (see *People* v. *Davis* (1968) 68 Cal.2d 481, 483 [67 Cal.Rptr. 547, 439 P.2d 651]) of the pertinent provisions is that they proscribe nudity in specified public places. They do not prohibit entertainment but merely enjoin that if the entertainer or performer

[7] In *Crownover* v. *Musick* our Supreme Court determined the constitutionality of ordinances of the Counties of Orange and Sacramento and of the City of Sacramento which prohibited the service of food or drink and the providing of entertainment by so-called "topless" women and "bottomless" persons of either sex in any establishment, and also prohibited live acts and exhibitions by such persons in any public place or place open to the public or to public view, excepting in all instances theaters or similar establishments primarily devoted to theatrical performances. All of the ordinances in question were adopted pursuant to Penal Code sections 318.5 and 318.6, which were added to the Penal Code in 1969. With respect to the background of such legislation, see *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.,* 47 Cal.App.3d 360, 365 [120 Cal.Rptr. 847], and *People* v. *Lindenbaum,* 11 Cal.App.3d Supp. 1, 4 [90 Cal.Rptr. 340].

[8] Article I, section 2, of the California Constitution was added November 5, 1974, replacing article I, section 9. Insofar as herein involved, there was no change in substance.

offers it, he or she must have some clothes on. In a word the ordinances regulate conduct. [¶] Is such conduct symbolic in the constitutional sense? Is this nudity in bars and other specified places open to the public so inherently communicative by nature as to call for the protection given the 'interchange of ideas . . . . [¶] [a]ll ideas having even the slightest redeeming social importance' (*Roth* v. *United States, supra,* 354 U.S. 476, 484 [1 L.Ed.2d 1498, 1506-1507])? The questions seem to provide their own negative answers."

Our Supreme Court further stated in *Crownover* (9 Cal.3d at pp. 426-427): "Nevertheless, following the approach of the United States Supreme Court in *United States* v. *O'Brien, supra,* 391 U.S. 367, we shall assume for the purpose of argument that there may be in some instances a 'communicative element' in conduct falling within the instant ordinances sufficient to bring into play the First Amendment. On this assumption, we shall proceed to determine according to the fourfold test announced in *O'Brien* [fn. omitted] whether such conduct is constitutionally protected activity. [¶] *First,* it cannot be doubted that the governmental entities in the instant cases have the inherent constitutional power to regulate nude conduct in bars, restaurants and other public places. It is clear that such regulations are justified by considerations of public morals and general welfare [citations] . . . , and the very elasticity of the police power gives it the capacity to meet the reasonable current requirements of a changing world. [Citation.] [¶] *Second,* it cannot be gainsaid that the regulations further 'an important or substantial governmental interest' (*United States* v. *O'Brien, supra,* 391 U.S. 367, 377 [20 L.Ed.2d 672, 680]) in promoting public morals. It is our province to take note of public morality, not to dictate it. In this pluralistic society we cannot say that a 'topless' female or a 'bottomless' or nude person of either sex in a public place. or place open to the public is 'socially commonplace' [citation] or has the support of a 'societal consensus' [citation]. Indeed, the instant legislation conceivably gives some indication that such nude conduct is not in accord with the *mores* of the people as a whole."

Our Supreme Court continued with the application of the fourfold test of *O'Brien* as follows (9 Cal.3d at pp. 427-428): "*Third,* it is also clear that this governmental interest in regulating nude conduct is 'unrelated to the suppression of free expression . . . .' (*United States* v. *O'Brien, supra,* 391 U.S. 367, 377.) The regulation is aimed at conduct, not speech; at 'separately identifiable conduct' (*Cohen* v. *California, supra,* 403 U.S. 15, 18), not at an activity 'entirely divorced from actually or potentially disruptive conduct . . . .' (*Tinker* v. *Des Moines School Dist., supra,* 393

U.S. 503, 505.) [¶] *Fourth,* if the ordinances impose any incidental restriction on First Amendment freedom of speech and expression (and we doubt that they do) it is certainly 'no greater than is essential to the furtherance of [an important or substantial governmental] interest.' (*United States* v. *O'Brien, supra,* 391 U.S. 367, 377.) The ordinances do not *prohibit* speech or expression or entertainment; they merely direct that the entertainer cannot appear with genitals or breasts exposed. The ordinances proscribe no more than is necessary to ban the nudity which has been deemed harmful to public welfare or morals. [¶] We are satisfied therefore that, upon the *assumption* made of some communicative element in the conduct here under discussion, the ordinances before us meet all of the four requirements set down by the Supreme Court in the *O'Brien* case. [Fn. omitted.] [¶] We, therefore, conclude that the ordinances on their face do not infringe upon the rights of freedom of speech or expression but are valid regulations of conduct."

No elaboration is necessary to show that in the light of the reasoning of *Crownover* the Los Angeles ordinance, presently under review, on its face does not infringe upon the rights of freedom of speech or expression but is a valid regulation of conduct. Moreover, the fact that the regulation is consonant with moral principles espoused by religious bodies—a situation not uncommon in the development of the common law and in the present-day judicial and legislative expressions of law—does not bring into operation the constitutional concept of separation of church and state.

Plaintiffs contend that the ordinance denies them due process of law and other rights, including the right to the pursuit of happiness and the right of privacy. But, as has been explained, the city in the proper exercise of the police power has reasonably regulated the matter of nudity on the public beaches of the city in furtherance of the general welfare. Under such circumstances the individual rights asserted by plaintiffs do not extend so far as to override the validly enacted legislation. (See *Cox* v. *Louisiana,* 379 U.S. 536, 554-555 [13 L.Ed.2d 471, 483-484, 85 S.Ct. 453]; *Poulos* v. *New Hampshire,* 345 U.S. 395, 405-408 [97 L.Ed. 1105, 1113-1116, 73 S.Ct. 760, 30 A.L.R.2d 987]; *Kovacs* v. *Cooper,* 336 U.S. 77, 82-89 [93 L.Ed. 513, 519-523, 69 S.Ct. 448, 10 A.L.R.2d 608].)

Plaintiffs further contend that the ordinance denies women equal protection of the law because "they are not granted the privilege granted men to sunbathe and swim with their breasts uncovered." Reliance is

placed upon the reasoning of *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], in which the court held that legislation regulating the employment of women as bartenders was invalid. But with respect to the ordinance challenged in the present case, we are not concerned with a classification based upon sex with relation to a fundamental right such as the right to pursue a lawful profession. Nature, not the legislative body, created the distinction between that portion of a woman's body and that of a man's torso. Unlike the situation with respect to men, nudity in the case of women is commonly understood to include the uncovering of the breasts. Consequently, in proscribing nudity on the part of women it was necessary to include express reference to that area of the body. The classification is reasonable, not arbitrary, and rests upon a ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced are treated alike. (See *Reed* v. *Reed,* 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 251].) No constitutionally improper classification is involved.

Plaintiffs further attack the ordinance on the ground that it is unconstitutionally vague and broad. They refer particularly to the use of the terms "anal region," "pubic hair region," and "buttocks."[9] Those words were used in the Orange County ordinance which was before our Supreme Court in *Crownover* v. *Musick, supra,* 9 Cal.3d 405. No claim of the nature now made here was asserted in that case. Since the Los Angeles ordinance is clearly aimed at preventing nudity on the public beaches, it does not appear probable that a person coming within the purview of the ordinance would fail to understand what was required of him or her under the terms of the ordinance.

■ The application of the ordinance is subject to the well-established rule of construction which is stated in *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, at page 645 [335 P.2d 672], as follows: "The

---

[9]The unabridged edition of The Random House Dictionary (1966) contains the following definitions. The word "anal" means "of, pertaining to, involving or near the anus"; "anus" is "the opening at the lower end of the alimentary canal, through which the solid refuse of digestion is excreted." (Reference is made to the diagram under "intestine," which shows the rectum and the anus.) The word "pubic" is stated to be an adjective, the meaning of which is "of, pertaining to, or situated near the pubes or the pubis." The word "pubis" is defined as being "that part of either innominate bone that, with the corresponding part of the other, forms the front of the pelvis." (Reference is made to the diagram under "pelvis," which shows the pubis and the pubic symphysis.) The word "buttock" is stated to be "[u]sually, buttocks," and is defined as follows: "(in humans) either of the two fleshy protuberances forming the lower and back part of the trunk."

fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] Such purpose will not be sacrificed to a literal construction of any part of the act. [Citations.]"

Plaintiffs also complain of the following provision: "This subdivision shall not apply to children under the age of 10 years." They state that there is nothing in the record "to suggest any rationale for drawing the line at 10 years old." It is sufficient to note that the line had to be drawn at some point and the city council did not act unreasonably in its choice of the age of 10 years.

We conclude that the ordinance is sufficiently certain and definite to meet the constitutional requirements. ▮ The governing law is set forth in *People* v. *Poulin,* 27 Cal.App.3d 54, at pages 59-60 [103 Cal.Rptr. 623]: "Lack of precision itself, in a criminal statute, is not offensive to the requirements of due process. ' "[T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . ." [Citation.] . . . ". . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. . . ." [Citations.]' (*Roth* v. *United States* (1957) 354 U.S. 476, 491-492 [1 L.Ed.2d 1498, 1511, 77 S.Ct. 1304].) ▮ [¶] 'A statute is not necessarily invalid even though in its definition some matter of degree may be involved; it will not generally be held invalid if the language is sufficient to enable the attorney to explain to his client and advise what questions may be left to the determination of the jury, so that he will be able to govern himself accordingly; neither is it necessary that the words have a universally recognized meaning; that the charging words will ordinarily be held sufficient if their meaning can be fairly ascertained by references to similar statutes or other judicial determinations, or by reference to the common law, or to the dictionary, or if the words themselves had a common and generally accepted meaning; that the long continued use of words in a statute without question as to their sufficiency creates a presumption that they have come to be well understood by those to whom they apply. . . . ▮ That the courts

will consider the underlying purpose of the law and although it might desire a little more certainty, as a general rule the court will uphold the validity of the statute and interpret it to the best of its ability, particularly when any attempt to make it more specific and certain, would tend to nullify its fundamental purpose . . . that where the statute involves some matters of degree as to which individuals and even jurors might reasonably disagree in their judgment, the statute will not for that reason alone be invalidated, . . .' (*People* v. *Daniel* (1959) 168 Cal.App.2d Supp. 788, 797-798 [337 P.2d 247].)"

▆▆ Finally, plaintiffs contend that the ordinance is "null and void" because the facts set forth in section three thereof are insufficient to show that there was an urgency requiring that it take effect immediately for the preservation of the public peace, health or safety. The ordinance was passed by the city council on July 18, 1974, and was approved on that date by the acting mayor. As an urgency measure it became effective on July 19, 1974.

Section 3 of the ordinance is as follows: "This ordinance is hereby declared to be urgently required for the immediate preservation of the public health, safety and general welfare and shall take effect immediately upon its publication. The following is a statement of facts showing its urgency: [¶] While the parks and beaches of this City should be operated and maintained in such a manner as to encourage their use by as many persons as possible, a recent phenomenon has begun to occur wherein some persons constituting a minority appear in such places nude or partially nude with the private parts of their bodies exposed. Some of these people leave the parks and beaches and walk along public streets and into businesses in a state of substantial or total nudity. Many other persons are offended thereby and stop using the City's parks and beaches. In many instances, the conduct of the minority has caused traffic congestion, the registering of complaints and inquiries with lifeguards, other City personnel, and with the Police Department. The time consumed investigating such matters has diverted some City employees whose duties are primarily emergency in nature, from fulfilling their obligation to protect the health, safety and general welfare of the public at large. Such conduct can cause a lifeguard to become distracted from his duties, further endangering public health and safety. It is immediately and urgently necessary to preserve all of the parks and beaches of the City as places where all persons can go to improve their health and general well-being without fear of becoming unwilling spectators to such conduct. [¶] The current ideal recreation weather, together with school recesses for summer vacations has increased the

need that this ordinance take effect immediately. [¶] If this ordinance does not take immediate effect, the public health, safety and general welfare will be greatly diminished as a result."

It appears that the presence of nude persons upon the public beaches was occurring in the middle of the summer season, thus presenting a substantial current problem. To await the usual period for the ordinance to take effect would be to permit the offensive conduct to continue until the summer season had almost ended. That it was urgent that the ordinance become immediately effective was clearly shown by the statement of facts in section 3 of the ordinance. (See *Potter* v. *City of Compton,* 15 Cal.App.2d 232, 237-238 [59 P.2d 537].)

▮ The governing law is set forth in 35 California Jurisprudence 2d, Municipal Corporations, section 404, pages 212-213: "Where the facts constituting the emergency or urgency are recited in the ordinance and are such that they may reasonably be held to constitute an emergency, the courts will not interfere, . . . The nature of the ordinance itself will, in most instances, be determinative of whether or not it is of urgent character."

▮ We conclude that the ordinance contained a valid urgency clause. But even if that clause be void, plaintiffs have not shown why the adoption of the ordinance was not sufficient to comply with the law as to the enactment of a nonurgency measure which would become effective at the usual date, thereby causing any challenge of the validity of the urgency clause to become moot. (See *In re Hoffman,* 155 Cal. 114, 120 [99 P. 517];[10] *Klassen* v. *Burton,* 110 Cal.App.2d 539, 544 [243 P.2d 28].)

The order denying a preliminary injunction is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied October 14, 1975, and appellants' petition for a hearing by the Supreme Court was denied December 17, 1975.

---

[10]In *In re Lane, supra,* 58 Cal.2d 99, at page 109, *In re Hoffman* was cited in a list of cases as to which the Supreme Court stated: "They are, of course, correct insofar as they hold that some or considerable state legislation falling short of a comprehensive general scheme does not occupy the field, but they have been impliedly overruled by the later decisions to the extent that they rest on the theory that requirements in addition to those set forth in state legislation may always be imposed by a locality." However, that statement does not detract from the pertinency of *In re Hoffman* with respect to the point in-support of which it is cited in this opinion.