837 So.2d 496 (2003)
TOP RANK, INC., America Presents, Ltd., and Showtime Networks, Inc., Appellants,
v.
FLORIDA STATE BOXING COMMISSION, et al., Appellees.
No. 1D01-4951.
District Court of Appeal of Florida, First District.
January 8, 2003.
Rehearing Denied February 20, 2003.
*497 Stephen H. Grimes and Susan L. Kelsey, Holland & Knight LLP, Tallahassee, for Appellants.
Robert A. Butterworth, Attorney General; Eric J. Taylor, Assistant Attorney General, Tallahassee, for Appellees.
WOLF, J.
Appellants, Top Rank, Inc. (Top Rank), America Presents, Ltd. (America Presents), and Showtime Networks, Inc. (Showtime), argue on appeal that the trial court erred in determining that section 548.06, Florida Statutes, which imposes a 5% tax on boxing promoters, did not violate the freedom of speech provisions of the First Amendment of the United States *498 Constitution. Showtime additionally argues that the trial court erred in dismissing Showtime as a party plaintiff. We do not find error as to either of the trial court's rulings at issue here.
Section 548.06, Florida Statutes (2000), provides in pertinent part as follows:
(1) A promoter holding a match shall, within 72 hours after the match, file with the commission a written report which includes the number of tickets sold, the amount of gross receipts, and any other facts the commission may require. For the purposes of this chapter, total gross receipts include:
(a) The gross price charged for the sale or lease of broadcasting, television, and motion picture rights without any deductions for commissions, brokerage fees, distribution fees, advertising, or other expenses or charges;
(b) The portion of the receipts from the sale of souvenirs, programs, and other concessions received by the promoter; and
(c) The face value of all tickets sold and complimentary tickets issued.
(2) The written report shall be accompanied by a tax payment in the amount of 5 percent of the total gross receipts exclusive of any federal taxes, except that the tax payment derived from the gross price charged for the sale or lease of broadcasting, television, and motion picture rights shall not exceed $40,000 for any single event.
A "promoter" is defined as "any person... who produces, arranges, or stages any match involving a professional." § 548.002(15), Fla. Stat. (2000).
Two of the appellants, Top Rank and America Presents, are licensed boxing promoters that arrange live professional boxing events. Many of these events are made available to consumers on a pay-per-view basis through distributers or broadcasters such as Showtime which distribute the programs through local cable TV operators who charge viewers a fee. Section 548.06, Florida Statutes, requires a promoter to pay a tax on these boxing events in the amount of 5% of the total gross receipts, as defined in the statute. The Florida Boxing Commission sent demand letters to Top Rank and America Presents, seeking the 5% gross receipts tax due pursuant to the statute. Top Rank has refused to pay the 5% tax since 1998 or to comply with associated regulations on the grounds that the tax and regulations are unconstitutional; America Presents likewise refused to pay the tax or comply with the requirements in connection with a boxing event that it promoted. Showtime claimed that it could be considered a promoter under Florida law and thus potentially liable for the tax; it joined Top Rank and America Presents in filing a complaint in which the three sought declaratory and injunctive relief based on allegations that the statute imposing the tax is unconstitutional under the First Amendment.
The trial court granted a motion to dismiss Showtime on the basis that Showtime lacked standing since it had not yet been assessed the boxing tax, and the court entered final summary judgment against Top Rank and America Presents, finding section 548.06, Florida Statutes, facially valid under the First Amendment. We determine that a boxing match does not constitute either pure or symbolic speech and decline to extend First Amendment protection to the promoters of a boxing match. We, therefore, uphold the facial validity of the statute. We also determine that the statute on its face does not apply to the distributors of boxing matches to cable networks; thus, we find that the trial court did not err in dismissing *499 Showtime's facial challenge to the statute.
The United States Supreme Court has determined that cable TV is a member of the media for conveying speech which is protected by the First Amendment. Leathers v. Medlock, 499 U.S. 439, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991). Subsequently, in Turner Broadcasting System v. Federal Communications Commission, 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994), the court recognized that the cable television industry, including "cable operators" and "cable programmers," are entitled to First Amendment protections. Appellant relies on three cases where taxation of cable operators and cable programmers for broadcasting boxing matches has been found to violate the First Amendment: United States Satellite Broadcasting Co. v. Lynch, 41 F.Supp.2d 1113 (E.D.Cal.1999); Showtime Networks, Inc. v. Georgia State Boxing Commission, slip. op. (Ga. Superior Ct. Nov. 23, 1999) (Case No.1999CV04184); and TVKO v. Howland, 2001 WL 562822, (15 Or. Tax 335 May 17, 2001) (Case No. 4445). None of these cases, however, involve taxation of a boxing promoter.
In United States Satellite, the State of California imposed a five percent tax on the actual broadcast of a fight, which was assessed directly against the broadcaster or cable operator who directly transmitted the fight to the viewers. There, the court specifically noted that it was not dealing with a tax on the promoter of the fight, but a tax on the dissemination of entertainment. Id. at 1121. In Showtime Networks, Inc., the Georgia tax purportedly applied to boxing promoters, but the Georgia statute was so broad it encompassed distributors, broadcasters, and cable programmers, all of which were held to be protected by the First Amendment in Turner Broadcasting. In fact Showtime, which is a cable programmer, was determined to be a promoter under the broad language of the Georgia statute. In TVKO, the Oregon taxing statute specifically defined a promoter to include the person who has the distribution rights to a pay-per-view telecast. Id. at 338. Unlike the California, Georgia, or Oregon statutes at issue in United States Satellite, Showtime Networks, Inc., and TVKO, the Florida statute clearly does not apply to a cable operator, to a distributor, or to a cable programmer. See § 548.002, Fla. Stat. (2000). Section 548.06 specifically applies only to a promoter.
Appellants urge us to extend the First Amendment safeguard from taxation to transactions other than those relating directly to the right to broadcast or the right to distribute to the broadcaster, arguing (1) the result is mandated by the holding in Simon & Schuster, Inc. v. New York State Crime Victims Bd., 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); (2) the act of promoting a boxing match and broadcasting the match is protected by the First Amendment and any burden placed solely on this activity would be a content related regulation which runs afoul of the First Amendment; and (3) the method of calculating the tax is a direct burden on the right to broadcast in violation of the First Amendment. For the reasons stated herein, we reject these arguments.
In Simon & Schuster, the supreme court struck down New York's "Son of Sam" law, which required that an accused or convicted criminal's income from works describing his crime be deposited in an escrow account and be made available to the victims of the crime. There, the court found that the statute impermissibly imposed a financial burden on the speakers because of the content of their speech. Id. at 508. In Simon & Schuster, the State Victims Crime Board argued that the burden *500 of the tax fell on the promoter of the book and the criminal rather than the media which is directly involved in the distribution process. The Boxing Commission makes the same argument in this case. The supreme court rejected the state's argument in Simon & Schuster:
Finally, the Board claims that even if the First Amendment prohibits content-based financial regulation specifically of the media the Son of Sam law is different, because it imposes a general burden on any "entity" contracting with a convicted person, to transmit that person's speech.... This argument falters on both semantic and constitutional grounds. Any "entity" that enters into such a contract becomes by definition a medium of communication, if it was not one already. In any event, the characterization of any entity as a member of the "media" is irrelevant for these purposes. The government's power to impose content-based financial disincentives on speech surely does not vary with the identity of the speaker.
Id. at 117, 112 S.Ct. 501 (citations omitted, emphasis in original). Thus, if we were dealing with either pure speech or symbolic speech, we would be required to reject the Boxing Commission's argument that merely because a person or entity may be several steps removed from the actual dissemination of speech, they are not entitled to First Amendment protections.
Financial burdens placed on the cable television process, however, do not necessarily implicate the First Amendment. See Leathers v. Medlock, 499 U.S. at 445-446, 452, 111 S.Ct. 1438. Taxation will implicate the First Amendment if it discriminates against members of the media or if it discriminates based on the content of the speech. Id. at 446, 111 S.Ct. 1438. In the instant case we are not dealing with taxation of a member of the media. Furthermore, the act of boxing does not involve either pure or symbolic speech. See Murdock v. City of Jacksonville, 361 F.Supp. 1083 (M.D.Fla.1973).
The supreme court in Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), stated that "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," a court has to ask whether "[a]n attempt to convey a particularized message was present, [and whether] the likelihood was great that the message would be understood by those who viewed it." That inquiry is pertinent in the instant case in determining whether boxing possesses "sufficient communicative elements" to bring it under the protection of the First Amendment. The question here is whether boxing, an athletic event where the participants are attempting to win prize money, is a form of conduct which contains elements of communication or involves pure speech or symbolic speech protected by the First Amendment.
In Justice v. National Collegiate Athletic Association, 577 F.Supp. 356 (D.Ariz. 1983), the court ruled that playing football was not pure speech but rather a physical activity:
In its most basic form, athletic competition does not constitute pure speech; rather, participation in athletic competition constitutes physical activity or conduct.
Id. at 374. In Justice, the court found that there was no First Amendment interest at stake relative to the National Inter-Collegiate Athletic Association's imposition of sanctions on the university which rendered the football team ineligible for post-season play or television appearances. The court found that those sanctions did not constitute a prior restraint upon the players' First Amendment freedom of expression. *501 Id. at 375. The Justice case, citing to the United States Supreme Court's analysis in Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), points out that the issue in determining the applicability of the First Amendment to conduct is whether the conduct is sufficiently communicative. There the court found that a conduct-oriented activity like sports is not entitled to the same First Amendment protection which other more "communicative" forms of entertainment have been afforded, such as jazz concerts and nude dancing. Id. at 374, citing Fact Concerts, Inc. v. City of Newport, 626 F.2d 1060 (1st Cir.1980) (jazz concerts); Venuti v. Riordan, 521 F.Supp. 1027 (D.Mass.1981) (nude dancing). In Sunset Amusement Co. v. Board of Police Commissioners of the City of Los Angeles, 7 Cal.3d 64, 74, 496 P.2d 840, 845-846, 101 Cal.Rptr. 768, 774 (1972), the court, in ruling that roller skating is not a constitutionally protected activity, stated that "no case has ever held or suggested that simple physical activity falls within the ambit of the First Amendment, at least in the absence of some element of communicating or advancing ideas or beliefs." See also MacDonald v. Newsome, 437 F.Supp. 796, 798 (E.D.N.C.1977) (concluding that surfboarding is not an activity protected by the First Amendment).
In Murdock v. City of Jacksonville, 361 F.Supp. 1083 (M.D.Fla.1973), the plaintiff alleged that he had a substantial interest protected by the First and Fourteenth Amendments to the United States Constitution in promoting wrestling exhibitions. There, the court rejected that argument stating that wrestling is not pure speech, free speech, "akin to free speech," or a symbolic act protected by the Constitution:
There can be no serious contention, and none has been advanced by plaintiff, that wrestling constitutes "pure speech" as that phrase is used by the Supreme Court. Neither does this Court believe that wrestling is an activity "akin to free speech" as that phrase was used in Tinker v. Des Moines Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In that case the Court held that the symbolic act of wearing politically significant armbands to protest the Vietnam war was "akin to free speech."
....
The symbolic acts which were protected by the First and Fourteenth Amendments in [symbolic speech] cases have no constitutional resemblance to the promotion of a wrestling match for entertainment. The promotion of wrestling matches in this case is not a symbolic act, nor is the wrestling match itself a symbolic act, protected by the First Amendment. Wrestling is just not "free speech", "akin to free speech", nor a "symbolic act".
Id. at 1095-1096 (footnote omitted).
In distinguishing a case relied upon by the plaintiff in Murdock, the court further stated,
This case does not involve a speech by a public figure or anything of that nature, but only concerns the right to promote wrestling, a purely entertainment pastime. There is no evidence which could conceivably support the idea that the promotion of professional wrestling involves speech or symbolic acts equivalent to [protected] speech ....
Id. at 1096.
A similar view was expressed in Post Newsweek Stations-Connecticut v. Travelers Insurance Co., 510 F.Supp. 81 (D.Conn.1981):
It is not disputed that entertainment is news, but the entertainment here is the exposition of an athletic exercise. As such, it is on the periphery of protected *502 speech (for purposes of a balancing of conflicting interests), as opposed, for example, to political speech, which is at the core of [F]irst [A]mendment protection.
Id. at 86 (citation omitted).
We recognize that athletic events provide people with a great deal of entertainment. We, however, agree with the views expressed in the previously cited cases that most athletic events do not convey any message, symbolic or otherwise.[1] Thus, the regulated activity in this case is clearly distinguishable from the pure speech which was regulated in Simon & Schuster.
Appellant argues that even if the boxing match itself does not constitute speech, that the interviews and commentary which are broadcast with the fight implicate the First Amendment. We reject this argument. The activity that is being taxed is the promotion of the boxing match and not the provisions of commentary and interviews.
The main argument of appellants is that the taxing statute at issue here violates the First Amendment as an illegal content-based regulation. In Leathers v. Medlock, the supreme court rejected the idea that intermedia and intramedia discrimination violates the First Amendment absent any evidence of intent to suppress speech or any effect on the expression of particular ideas. Id. at 447, 111 S.Ct. 1438. The court in Leathers v. Medlock examined the case of Regan v. Taxation with Representation of Wash., 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), and stated that it "stood for the proposition that a tax scheme that discriminates among speakers does not implicate the First Amendment unless it discriminates on the bases of ideas." Id. at 450. The entire focus in reviewing content-based regulation is that government will not attempt to limit dissemination of a particular message or idea. As stated herein, boxing conveys no message or idea; therefore, it has no content which is protected by the First Amendment.
The final argument made by appellants is that because the amount of tax assessed is based on the direct receipts of the broadcast, it is an impermissible tax on the cable distributors. As we discussed earlier, however, the tax is assessed on the privilege of promoting a boxing match, which is not protected by the First Amendment. We, therefore, reject this contention.
We find no error in the trial court's dismissing Showtime from this litigation. Showtime is a provider of cable programming. Appellee concedes in its brief that Showtime is not covered by the definition of promoter in the statute. There is no evidence that the Department of Revenue has ever attempted to apply the statute to Showtime. Showtime's greatest concern seems to be with the rules adopted by the boxing commission rather than the statute itself. Under these circumstances, the trial court properly dismissed Showtime as a party.
ERVIN and BARFIELD, JJ., concur.
NOTES
[1] I am in fact an enthusiastic sports fan, but I do not believe we should dilute the significance of First Amendment protection by making it applicable to all athletic endeavors.