James M. MALONEY, Plaintiffs,

v.

Andrew CUOMO, in his official capacity as Attorney General of the State of New York, Eliot Spitzer, in his official capacity as Governor of the State of New York, and Kathleen A. Rice, in her official capacity as District Attorney of the County of Nassau, and their successors, Defendants.

No. 03 CV 0786(ADS)(MLO).

United States District Court, E.D. New York.

Jan. 17, 2007.

James M. Maloney, Port Washington, NY, Plaintiff Pro Se.

Andrew Cuomo, State of New York, Office of the Attorney General, by Dorothy

O. Nese, Assistant Attorney General, Mineola, NY, for the State Defendants.

Lorna B. Goodman, Nassau County Attorney's Office, by Liora M. Ben–Sorek, Deputy County Attorney, Tatum J. Fox, Deputy County Attorney, Mineola, NY, for the District Attorney.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

James M. Maloney, a licensed attorney acting *pro se*, brought this action against New York State Attorney General Eliot Spitzer, New York State Governor George Pataki (together with Spitzer, the "State Defendants"), and Nassau County District Attorney Dennis Dillon (collectively, the "Defendants"), seeking a declaration that certain provisions of the New York State Penal Law that prohibit the in-home possession of "nunchaku" are unconstitutional.

Presently there are two motions before the Court: (1) a motion by the State Defendants to dismiss the amended complaint for (a) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); and (b) failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); and (2) a motion by the District Attorney to dismiss the complaint for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## I. BACKGROUND

The following facts are taken from the amended complaint. The plaintiff was born in 1959, making him forty-four years old at the time of the commencement of this action. The plaintiff has been a student of martial arts since approximately 1975. The plaintiff practices several martial arts disciplines, including "Okinawan" styles of karate, "Ving Tsun" or "Wing Chun" style of kung fu, and aikido. Drawing on the various forms of martial arts, the plaintiff developed his own style called "Shafan Ha–Lavan."

The plaintiff's "Shafan Ha–Lavan" martial art incorporates the use of "nunchaku" as a part of the training and technique. "Nunchaku," also referred to as "chuka sticks" or "nun-chuks," is a hand-held weapon, commonly described as being devised of two short sticks of equal length joined by a rope or a chain. The New York criminal statute at issue in this case defines "nunchaku" as follows:

> Chuka stick means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks.

N.Y. Penal Law § 265.00(14). The plaintiff alleges that he has trained peacefully with the nunchaku since 1975, and has acquired numerous nunchaku during his training. The plaintiff alleges that he only uses the nunchaku within the context of his martial arts training.

On August 24, 2000, the plaintiff was arrested and charged with six violations of the New York Penal Law, including one count of criminal possession of a weapon in the fourth degree for possessing a nunchaku in his home in violation of New York Penal Law § 265.01. This section states, in part:

> A person is guilty of criminal possession of a weapon in the fourth degree when:
>
> (1) He possesses any firearm, electronic dart gun, electronic stun gun, gravity

knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star."

N.Y. Penal Law § 265.01(1). A violation of section 265.01 is a class A misdemeanor.

The criminal charges for possession of nunchaku was based solely on in-home possession, and not supported by any allegations that the plaintiff had used the nunchaku in the commission of a crime; that he carried the nunchaku in public; or engaged in any other prohibited conduct in connection with said nunchaku. Thus, the only criminal activity alleged against the plaintiff was his possession of the nunchaku in his home.

On January 28, 2003, the criminal charges against the plaintiff were dismissed. Although the plaintiff does not indicate the reason the charges were dismissed in the amended complaint, the Court is cognizant from the earlier proceedings in this Court that the criminal possession charges were dismissed in exchange for the plaintiff's guilty plea to one count of disorderly conduct pursuant to New York Penal Law § 240.20(7). The plaintiff received a conditional discharge with regard to the other pending charges; agreed to the destruction of the nunchaku confiscated at the time of his August 24, 2000 arrest; and paid a fine in the amount of $310.

On February 18, 2003, the plaintiff commenced this action by filing this complaint against the Attorney General and the District Attorney seeking a declaration that sections 265.00 through 265.02 of the New York Penal Law are unconstitutional. Although the plaintiff was charged with violating section 265.01, he is also challenging the constitutionality of section 265.02. Section 265.02 provides that a violation of section 265.01 by a person who has previously been convicted of any crime is a class D felony, rather than a misdemeanor. On April 15, 2003, the plaintiff voluntarily dismissed his cause of action against the District Attorney pursuant to Fed.R.Civ.P. 41(a)(1)(ii), without prejudice. On October 31, 2004, the plaintiff filed a motion for summary judgment against the Attorney General.

On August 31, 2005, the Court issued a Memorandum of Decision and Order denying the plaintiff's motion for summary judgment. The Court held that the plaintiff lacked standing to prosecute this action against the Attorney General. Specifically, the Court stated:

> In a case such as this, where a plaintiff seeks a declaration that a particular statute is unconstitutional, "the proper defendants are the government officials charged with the administration and enforcement of the statute." *Curtis v. Pataki*, No. 96 Civ. 425, 1997 WL 614285, at *5 (Oct. 1, 1997 N.D.N.Y.) (citing *New Hampshire Right to Life Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir.1996) (citations omitted)). "It is well established in New York that the district attorney, *and the district attorney alone*, should decide when and in what manner to prosecute a suspected offender." *Baez v. Hennessy*, 853 F.2d 73, 76 (2d Cir.1988) (citations omitted).

Memorandum of Decision and Order, at 8 (emphasis added). Accordingly, the Court concluded that the plaintiff lacked standing under Article III, section 2 of the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. However, the Court *sua sponte* granted the plaintiff leave to serve a supplemental summons and amended complaint "against the entity responsible for the potential prosecution of the plaintiff under the statutes in question."

On September 3, 2005, the plaintiff filed an amended complaint naming the Attorney General, the Governor, and the District Attorney as defendants. The plaintiff challenges the constitutionality of New York's ban on the in-home possession of nunchaku.

## II. DISCUSSION

### A. As to The Caption

Rule 25(d) provides that "[w]hen a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party." Fed.R.Civ.P. 25(d).

Originally, the amended complaint named former Attorney General Elliot Spitzer, former Governor George Pataki, and former District Attorney Dennis Dillon as defendants. Since the time that the amended complaint was filed, Andrew Cuomo succeeded Eliot Spitzer as Attorney General, Eliot Spitzer replaced George Pataki as Governor, and Kathleen A. Rice succeeded Denis Dillon as the Nassau County District Attorney. Accordingly, the caption on this Memorandum of Decision and Order reflects those substitutions.

### B. The Plaintiff's *Pro Se* Status

■ Although the plaintiff is proceeding *pro se*, he is an attorney duly licensed to practice law in the State of New York, the Second Circuit Court of Appeals, and the United States District Court for the Southern and Eastern Districts of New York. The plaintiff's letterhead, which appears on documents he has submitted in this case, states that he is an "attorney at law" and a "proctor in admiralty." In addition to being admitted to practice in the State and federal courts of New York, the plaintiff's letterhead also indicates that he is admitted in New Jersey, the United States Supreme Court, the United States Courts of Appeal for the Second and Third Circuits, the District of New Jersey, the District of Connecticut, the Northern District of Illinois, the Court of International Trade, and the Court of Federal Claims.

Although the Court normally will hold the pleadings of a *pro se* plaintiff to a less rigorous standard of review than pleadings drafted by counsel, as an experienced attorney the plaintiff's papers in this case are not entitled to such special consideration. *See Goel v. U.S. Dept. of Justice,* No. 03cv0579, 2003 WL 22047877, *1 (S.D.N.Y. Aug.29, 2003); *Kuriakose v. City of Mount Vernon,* 41 F.Supp.2d 460, 465 (S.D.N.Y.1999); *Guardino v. Am. Sav. & Loan Ass'n of Fla.,* 593 F.Supp. 691, 694 (E.D.N.Y.1984).

### C. The Declaratory Judgment Act

■ Although not raised by the parties, the Court must, as an initial matter, determine whether jurisdiction in this Court is proper. The plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. This Act does not itself provide a basis for jurisdiction. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy *within its jurisdiction* ... any court of the United States ... may declare the rights and other legal relations of any interested party.") (emphasis added); *Conn. Yankee Atomic Power Co. v. Town of Haddam Planning and Zoning Comm'n,* 19 Fed. Appx. 21, 22–23, 2001 WL 1167816 *1 (2d Cir.2001). Thus, for jurisdiction to lie, the matter to be determined must satisfy the case or controversy requirement for federal jurisdiction pronounced in Article III, Section 2 of the United States Constitution. *Id.* (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir.1996)).

■ A declaratory judgment action presents an actual controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.,* 411 F.3d 384, 388 (2d Cir.2005); *In re Prudential Lines Inc.,* 158 F.3d 65, 70 (2d Cir.1998) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). A plaintiff seeking declaratory relief cannot rely solely on past injury to satisfy this requirement, but must show a likelihood that the challenged conduct will occur again in the future. *McCormick v. School Dist. of Mamaroneck,* 370 F.3d 275, 284 (2d Cir.2004); *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998).

■ In this case, the Declaratory Judgment Act is satisfied because the plaintiff has already been arrested once under the allegedly unconstitutional statute, and intends to continue using nunchaku in his martial arts training, which he considers to be constitutionally protected activity. *See Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) (Brennan, J.) (discussing the desire to avoid putting a plaintiff to the choice of "intentionally flouting state law" or "forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.").

### D. Motion to Dismiss Standards

#### 1. Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *Robinson v. Gov't of Malaysia,* 269 F.3d 133, 140 n. 6 (2d Cir.2001). Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998).

#### 2. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim on which relief can be granted." In deciding such a motion, the Court must take the allegations of the complaint to be true and "draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In this regard, a complaint will not be dismissed unless " 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.' " *Scutti Enters., LLC. v. Park Place Entm't Corp.,* 322 F.3d 211, 214 (2d Cir.2003) (quoting *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997)); *Desiderio v. Nat'l Ass'n of Sec. Dealers,* 191 F.3d 198, 202 (2d Cir.1999).

#### 3. Rule 12(c)

The standard for reviewing a motion for judgment on the pleadings under Fed. R.Civ.P. 12(c) is analogous to the rules pursuant to Rule 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001). The Court must determine whether "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union United Plant Guard Workers of Am.,* 47 F.3d 14, 16 (2d Cir.1995). As with a 12(b)(6) motion to dismiss, the issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims.

*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

### E. The Attorney General and the Governor are not Proper Defendants

■ The Court previously held in this case that the plaintiff lacks standing to sue the Attorney General because the plaintiff has no reasonable fear of prosecution by this official. *See Maloney v. Spitzer,* 03cv0786, Memorandum of Decision and Order (Aug. 31, 2005); *accord Curtis v. Pataki,* No. 96 Civ. 425, 1997 WL 614285, at *5 (N.D.N.Y. Oct. 1, 1997) (dismissing claims against Governor for failure to state a claim because Governor had no responsibility for administering or enforcing the challenged statute) (citation omitted); *cf. Baez v. Hennessy,* 853 F.2d 73, 76 (2d Cir.1988) ("It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender.").

Notwithstanding the Court's August 31, 2005 Order, the plaintiff argues that the Attorney General is a proper defendant because the amended complaint "seeks contingent equitable relief, ... in a form such as an affirmative injunction requiring the Attorney General to notify any persons who received notice that their home possession of nunchaku is illegal ... that they may not be criminally prosecuted for the simple possession of nunchaku in their own homes." Pls. Br. at 20. The Court does not agree that this request for "contingent" relief creates standing on the part of the plaintiff against the Attorney General. Accordingly, the plaintiff's claims against the Attorney General are dismissed.

Similarly, the Court sees no basis for the plaintiff to assert his claims against the Governor. As with the Attorney General, the Governor is not involved in the enforcement of the statutes that the plaintiff is challenging. Thus, the claims against the Governor should be dismissed. *See Wang v. Pataki,* 164 F.Supp.2d 406, 410 (S.D.N.Y.2001) (dismissing Governor as a defendant in a suit raising a challenge to the constitutionality of a state statute where there were no allegations that the Governor had any connection with the enforcement of the statute "other than the general duty to take care that the laws be faithfully executed"); *see also Romeu v. Cohen,* 121 F.Supp.2d 264, 272 (S.D.N.Y. 2000); *Warden v. Pataki,* 35 F.Supp.2d 354, 359 (S.D.N.Y.) (citations omitted), aff'd, 201 F.3d 430, 1999 WL 1012404 (2d Cir.1999); *cf. Shell Oil Co. v. Noel,* 608 F.2d 208, 211–12 (1st Cir.1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper party defendant in every action attacking the constitutionality of a state statute. Nor is the mere fact that an attorney general has a duty to prosecute all actions in which the state is interested enough to make him a proper defendant in every such action.") (citations omitted). Accordingly, the State Defendants' motion to dismiss the complaint is granted.

### F. As to the District Attorney's Motion for Judgment on the Pleadings

Having dismissed the plaintiff's complaint against the State Defendants, the only defendant that remains is the District Attorney. The plaintiff's amended complaint challenges the constitutionality of New York's weapons-possession law, as applied to the in-home possession of nunchaku by the plaintiff, on three independent grounds: (1) the free speech clause of the First Amendment; (2) the Second Amendment's right to bear arms; and (3) "unenumerated" rights found in the Ninth Amendment. The District Attorney ar-

gues that she is entitled to judgment on the pleadings on all three causes of action.

## 1. As to the First Amendment

■ The first amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. This provision protects not only actual speech, but also "expressive" or "symbolic" conduct. *See Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 1547, 155 L.Ed.2d 535 (2003); *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974); *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). However, the First Amendment does not protect all conduct that a person intends to be expressive or symbolic. *O'Brien*, 391 U.S. at 376, 88 S.Ct. at 1678. Whether particular conduct is worthy of First Amendment protection depends on whether the actor intended "to convey a particularized message," and whether the surrounding circumstances are such that "the likelihood was great that the message would be understood by those who viewed it." *Spence*, 418 U.S. at 410–11, 94 S.Ct. at 2730.

■ In this case, the plaintiff alleges that the "peaceful training with and twirling of the nunchaku [in the privacy of one's own home] is expressive conduct, which is protected by the First Amendment to the Constitution of the United States." (Am. Compl.¶¶ 40, 46.) In her motion for judgment on the pleadings, the District Attorney does not make a genuine effort do dispute the plaintiff's contention that his use of the nunchaku constitutes protected speech. Instead, citing religious-exercise cases, the District Attorney argues that New York State's blanket ban on the possession of nunchaku is a reasonable restriction on the plaintiff's expression, and necessary to satisfy a legitimate government objective. *See People v. Singh*, 135

Misc.2d 701, 516 N.Y.S.2d 412 (1987) (holding that a New York law prohibiting, with some exceptions, the wearing or carrying of knives did not violate a Sikh's freedom to practice his religion, which required him to carry a sword called a "Kirpan"); *see also United States v. Lee*, 455 U.S. 252, 261, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982) (holding that the collection of social security taxes did not violate the First Amendment free exercise rights of an employer who was a member of the Old Order Amish). Notwithstanding the District Attorney's failure to challenge the plaintiff regarding the nature of his alleged "speech," it is the opinion of the Court that the plaintiff's conduct in this case is not speech, and therefore the plaintiff fails to state a claim under the First Amendment.

To be clear, the plaintiff does not allege that he has or will try to convey any "particularized" message through his use of the nunchaku. *See Spence*, 418 U.S. at 410–11, 94 S.Ct. at 2730. The plaintiff uses the nunchaku "to develop dexterity and coordination." (Compl.¶ 16.) The plaintiff began training with the weapon, based in part, on its effectiveness in disarming an assailant armed with a knife or other sharp instrument. (Compl.¶ 17). There are no allegations that the use of the nunchaku are integral to anything resembling either actual or symbolic speech.

The Supreme Court has held that the First Amendment protects a wide variety of conduct, including many forms of entertainment. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning); *Spence*, 418 U.S. 405, 94 S.Ct. 2727 (affixing a peace symbol to a flag); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (marching); *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing armbands); *see also, e.g.,*

*Schad v. Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee"); *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 2345, 132 L.Ed.2d 487 (1995) (remarking that examples of painting, music, and poetry are "unquestionably shielded").

However, lower federal courts and state courts have generally been unwilling to extend First Amendment protection to sports or athletics. *See Justice v. Nat'l Collegiate Athletic Assoc.,* 577 F.Supp. 356, 374 (D.Ariz.1983) ("[P]laintiff's argument that the players have been denied a constitutional right to expression through football is unfounded"); *MacDonald v. Newsome,* 437 F.Supp. 796, 798 (E.D.N.C.1977) (holding that surfing is not protected under the First Amendment); *Murdock v. City of Jacksonville,* 361 F.Supp. 1083, 1095–96 (M.D.Fla.1973) (holding that wrestling is not "pure" speech, free speech, "akin to free speech," or a symbolic act protected by the Constitution); *Top Rank, Inc. v. Fla. State Boxing Comm'n,* 837 So.2d 496, 498 (Fla.Dist.Ct.App.2003) ("[T]he act of boxing does not involve either pure or symbolic speech.") (citation omitted); *Sunset Amusement Co. v. Board of Police Comm'rs of Los Angeles,* 7 Cal.3d 64, 101 Cal.Rptr. 768, 496 P.2d 840, 845–46 (1972) (ruling that roller-skating is not a constitutionally protected activity and stating that "no case has ever held or suggested that simple physical activity falls within the ambit of the First Amendment, at least in the absence of some element of communicating or advancing ideas or beliefs."). *But cf. Post Newsweek Stations–Connecticut v. Travelers Ins. Co.,* 510 F.Supp. 81, 86 (D.Conn.1981) (stating that entertainment in the form of the exposition of an athletic exercise, in this case world-class figure skating, "is on the periphery of protected speech").

As the Court stated in *Justice:* "In its most basic form, athletic competition does not constitute pure speech; rather, participation in athletic competition constitutes physical activity or conduct." *Justice,* 577 F.Supp. at 374. Although the activity in this case is not competition, the Court sees no reason to distinguish between public competition and at-home training or practice for purposes of the First Amendment.

The Court recognizes and accepts that the martial arts generally, and perhaps use of nunchaku in particular, have a rich history and are culturally significant to many people in many parts of the world. Under some circumstances an individual's participation in martial arts, and the attendant use of related equipment such as nunchaku, might warrant some degree of First Amendment protection. But there is nothing in the amended complaint or the plaintiff's papers to suggest that should be the case here. The plaintiff alleges that he uses the nunchaku for physical training and for self-defense. Under these circumstances, it is the opinion of the Court that the plaintiff is similar to the boxer and wrestler engaged in a strictly physical and unprotected activity. As such, the amended complaint on its face fails to satisfy the first requirement of the *Spence* test. Accordingly, the District Attorney's Rule 12(c) motion to dismiss the plaintiff's first cause of action is granted.

**2. As to the Second and Ninth Amendments**

■ The plaintiff's remaining causes of action alleging violations of the Second and Ninth Amendments are easily disposed of.

The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. With regard to the plaintiff's claim that New York's ban on possessing nunchaku violates the Second Amendment, the Court looks to the Second Circuit's decision in *Bach v. Pataki*, 408 F.3d 75 (2d Cir.2005). The plaintiff in *Bach*, a non-resident of the State of New York, challenged a New York statute that restricts the issuance of handgun licenses to only New York residents. In rejecting the plaintiff's Second Amendment challenge, the Court held "that the Second Amendment's 'right to keep and bear arms' imposes a limitation on only federal, not state, legislative efforts." *Id.* at 84. *Bach* is controlling here. The Second Amendment imposes no limitation on New York State's ability to ban the possession of certain weapons, including the nunchaku. Accordingly, the District Attorney's motion to dismiss the plaintiff's second cause of action is granted.

The Ninth Amendment provides that "The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. II. Similar to the Second Amendment, the Ninth Amendment is only applicable against federal, and not state, actors. *See Rini v. Zwirn*, 886 F.Supp. 270, 289–90 (E.D.N.Y. 1995) (citing Laurence H. Tribe, American Constitutional Law § 11–2, at 772–73 (2d ed.1988)). In addition, the Ninth Amendment is considered "a rule of construction" that does not give rise to individual rights. *See United States v. Bifield*, 702 F.2d 342, 349 (2d Cir.1983); *see also Clynch v. Chapman*, 285 F.Supp.2d 213, 219 (D.Conn. 2003) (dismissing Ninth Amendment cause of action for failure to state a claim); *Rini*, 886 F.Supp. at 289–90 (dismissing Section 1983 cause of action based on a violation of the Ninth Amendment). So while the Ninth Amendment may provide the basis for recognition of un-enumerated rights, which themselves may be enforceable against a State under the Due Process Clause of the Fourteenth Amendment, the Ninth Amendment itself provides no substantive right. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir.1991) (dismissing the plaintiff's Ninth Amendment claim on the ground that "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law"); *DeLeon v. Little*, 981 F.Supp. 728, 734 (D.Conn.1997) (holding that " 'the [Ninth Amendment] does not guarantee any constitutional right.' " (quotation omitted)); *Mann v. Meachem*, 929 F.Supp. 622, 634 (N.D.N.Y.1996) (dismissing the plaintiff's section 1983 claim to the extent that it was based upon a violation of the Ninth Amendment because "[t]he Ninth Amendment is recognized as a rule of construction and does not protect any specific right.") (citation omitted). Accordingly, the District Attorney's motion to dismiss the plaintiff's third cause of action is granted.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the State Defendants' motion to dismiss the amended complaint is granted; and it is further

**ORDERED,** that the District Attorney's motion for judgment on the pleadings is granted; and it is further

**ORDERED,** that the amended complaint is dismissed; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**